IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MONICA N. EAVES, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACT. NO. 2:19-cv-1094-ECM |
| | )         [WO] |
| CAJUN OPERATING COMPANY d/b/a | ) |
| CHURCH'S CHICKEN, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

**MEMORANDUM OPINION and ORDER**

**I.  INTRODUCTION**

Plaintiff Monica N. Eaves brings this action against her employer, Defendant Cajun Operating Company d/b/a Church's Chicken ("Cajun"), and one of Cajun's employees, Defendant Kenneth Parker ("Parker") (collectively, "Defendants").  In her second amended complaint (the operative complaint), she brings claims of hostile work environment, retaliation, and sex discrimination against Cajun pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").  She also brings Alabama state law claims of negligent or wanton retention and negligent or wanton supervision against Cajun. Finally, she brings Alabama state law claims of invasion of privacy, assault and battery, and outrage against Cajun and Parker.

Now pending before the Court is Cajun's motion to dismiss (doc. 34) and Parker's partial motion to dismiss (doc. 44).  The Plaintiff has filed responses in opposition to the motions, and the motions are ripe for review.  After careful consideration, the Court

1

concludes that Parker's motion is due to be GRANTED and that Cajun's motion is due to be GRANTED IN PART and DENIED IN PART.

## II.  JURISDICTION AND VENUE

The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and the jurisdictional grant found in 42 U.S.C. § 2000e-5(f)(3).  The Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).  Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "On a motion to dismiss, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Bailey v. Wheeler*, 843 F.3d 473, 478 n.3 (11th Cir. 2016).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555–56.  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citation omitted).  Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citation omitted).

## IV.  FACTUAL AND PROCEDURAL BACKGROUND[1]

The Plaintiff began working at Church's Chicken on approximately September 6, 2006, as a shift leader.  Since 2013, the Plaintiff has been a Restaurant General Manager ("RGM") at the store located at 4770 Mobile Highway, Montgomery, Alabama.  On approximately January 30, 2019, Parker, the RGM of another Church's Chicken restaurant in the same region, came to the Mobile Highway store while the Plaintiff was working.  During his visit, Parker entered the walk-in freezer where the Plaintiff was working and, without permission, allegedly kissed the Plaintiff and grabbed her buttocks.  The Plaintiff was offended and felt threatened by the actions.

The next day, the Plaintiff reported the incident to her immediate supervisor, Moses Walker.  Company policy required Mr. Walker to report the incident to Human Resources.  However, he did not report the assault and no action was taken, even when the Plaintiff followed up with him about the incident.

---

[1] This recitation of the facts is based upon the Plaintiff's second amended complaint.  The Court recites only the facts pertinent to resolving the Defendants' motions to dismiss.  At this stage of the proceedings, for purposes of ruling on the motions, the facts alleged in the second amended complaint and reasonable inferences drawn therefrom are set forth in the light most favorable to the Plaintiff.

In March 2019, the Plaintiff attended a RGM meeting with Mr. Walker and the RGMs in the Montgomery area, including Parker.  Parker's presence made the Plaintiff uncomfortable.  During the meeting, the Plaintiff asked Mr. Walker a question about insurance.  Mr. Walker responded in a hostile manner and stated, "Be careful, you're bitching too much."  The Plaintiff believed this comment was related to her repeated complaints to Mr. Walker about the assault in January 2019.

After the March 2019 meeting, the Plaintiff contacted Adrienne Brealond, Cajun's HR representative, and reported the assault that occurred in January 2019, Mr. Walker's failure to take any action, and Mr. Walker's inappropriate comment.  Ms. Brealond said she had no knowledge of the Plaintiff's prior complaint to Mr. Walker and that she would investigate the incident.  According to the Plaintiff, Ms. Brealond did not visit the Mobile Highway store, did not speak further to the Plaintiff, did not interview potential witnesses, and took no corrective or remedial action.

On approximately May 8, 2019, Mr. Walker gave the Plaintiff her annual performance evaluation for the 2018 year.  Mr. Walker rated the Plaintiff "Below Target" in many categories.  As a result, the Plaintiff did not receive a bonus, was ineligible for a raise, and was given a Performance Improvement Plan.  In her almost fourteen years as a Church's Chicken employee, the Plaintiff had never before received a "Below Target" evaluation or overall negative review, nor had she been on a Performance Improvement Plan.

On approximately June 11, 2019, the Plaintiff contacted Angela Pettway, the Zone 2 Director, regarding the alleged assault, offensive comments, and the failure of Mr.

Walker and Human Resources to take any remedial action.  Ms. Pettway did not investigate or otherwise respond to the Plaintiff's complaints.

On approximately June 13, 2019, the Plaintiff reported the assault and other issues to Cajun's "Speak Freely" hotline.  On June 19, 2019, Cajun conducted a surface-level investigation of the assault but did not investigate or take any action relating to Mr. Walker's comment or lack of remedial action.  In a meeting with the Plaintiff, Mr. Walker, and Ms. Brealond, the Plaintiff was told that, although she had been sexually assaulted, it only happened one time and was not enough to constitute sexual harassment and did not warrant discipline for Parker.  Ms. Brealond allegedly told the Plaintiff to "get over" the assault.

After complaining about the assault, comments, and other issues, the Plaintiff began experiencing scheduling issues.  Her contract requires her to work fifty hours per week. However, for months the Plaintiff has been scheduled to work sixty to seventy hours or more per week, even though Mr. Walker has allowed other male RGMs, including Parker, to work fewer than the required fifty hours per week.  Additionally, Mr. Walker has denied the Plaintiff's requests to use vacation time or sick days, even though he has allowed other male RGMs, including Parker, to take time off.  The Plaintiff repeatedly requested assistance at her store due to the hours she was required to work and the store continuously being short-staffed.  However, those requests were ignored and denied.

On or about May 9, 2019, the Plaintiff filled out an EEOC Inquiry alleging sex discrimination, harassment, and retaliation.  The EEOC set an intake interview with the Plaintiff for August 20, 2019.  The Plaintiff signed her EEOC Charge of Discrimination on

September 5, 2019.  The EEOC mailed the Plaintiff a Right-to-Sue Notice on October 2, 2019.

The Plaintiff filed her original complaint on December 30, 2019. (Doc. 1).  She attached to her complaint the Right-to-Sue Notice she received from the EEOC and which was mailed to her on October 2, 2019. (Doc. 1-1 at 1).  On April 16, 2020, the Court ordered the Plaintiff, who was pro se, to file an amended complaint and that "the amended complaint must state the date the plaintiff received a copy of the Notice-of-Right-to-Sue Letter issued by the Equal Employment Opportunity Commission." (Doc. 9 at 3) (emphases omitted).  On May 6, 2020, the Court ordered the Plaintiff to file her Amended Complaint by June 8, 2020.  At this time, the Plaintiff was still pro se.  The Plaintiff filed her Amended Complaint one day late on June 9, 2020.  While the Amended Complaint did not identify the date the Plaintiff received the Right-to-Sue Notice, the Amended Complaint stated that the Notice "was mailed by the EEOC to Plaintiff on October 2, 2019." (Doc. 11 at 2).  Later, the Plaintiff obtained counsel, and on August 6, 2020, the Court granted the Plaintiff leave to file a Second Amended Complaint. (Doc. 30).  The Court's August 6, 2020 Order contains no requirement that the Second Amended Complaint state the date the Plaintiff received the Right-to-Sue Notice.  The Plaintiff filed her Second Amended Complaint on August 17, 2020. (Doc. 31).  The Second Amended Complaint states that the Right-to-Sue Notice was mailed to the Plaintiff on October 2, 2019.

# V. DISCUSSION

Cajun moves to dismiss the second amended complaint in its entirety, raising procedural and substantive arguments.  Parker moves to dismiss the invasion of privacy and outrage claims under Alabama state law.  Parker does not challenge the state law assault and battery claim.

As an initial matter, Cajun argues that the Plaintiff's entire complaint should be dismissed under Rule 41 of the Federal Rules of Civil Procedure because the Plaintiff failed to abide by the Court's prior orders to (1) file her Amended Complaint by June 8, 2020; and (2) state in her Amended Complaint when she received the Right-to-Sue Notice from the EEOC.  "If the plaintiff fails . . . to comply with . . . a court order, a defendant may move to dismiss the action or any claim against it." FED. R. CIV. P. 41(b).  "The court's power to dismiss is an inherent aspect of its authority to enforce its orders and [e]nsure prompt disposition of lawsuits.  The legal standard . . . under Rule 41(b) is whether there is a 'clear record of delay or willful contempt and a finding that lesser sanctions would not suffice.'" *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985) (citations omitted).

The Court finds Cajun's argument without merit.  First, the Court's Orders with which the Plaintiff purportedly failed to comply pertain to the Plaintiff's First Amended Complaint.  The Plaintiff subsequently was granted leave to file, and did file, a Second Amended Complaint.  The Second Amended Complaint is now the operative pleading, and whatever deficiencies may have existed with respect to the First Amended Complaint are moot in light of the filing of the Second Amended Complaint. *See Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006) (stating that "[a]n amended

pleading supersedes the former pleading" such that "the [former] pleading is abandoned by the amendment" (citation omitted)); *Fritz v. Standard Sec. Life Ins. Co. of N.Y.*, 676 F.2d 1356,1358 (11th Cir. 1982) ("Under the Federal Rules, an amended complaint supersedes the original complaint."). Even if they were not moot, neither the one-day delay in filing the First Amended Complaint nor the failure to plead the date of receipt of the Right-to-Sue Notice, separately or together, demonstrates a "clear record of delay or willful contempt" on the Plaintiff's part.[2] *See Goforth*, 766 F.2d at 1535 (citation omitted). Accordingly, the Court declines to dismiss this action under Rule 41(b) and will turn to the substance of the Defendants' motions to dismiss.

The Court's discussion will proceed in three parts. First, the Court will address the Plaintiff's federal claims against Cajun. Second, the Court will address the Plaintiff's state

---

[2] Regarding the one-day delay in filing the First Amended Complaint, the Plaintiff states she submitted her Amended Complaint to the Clerk's office dropbox (which was utilized due to the COVID-19 pandemic because the Clerk's physical office was closed to the public) on June 8, 2020, but the Amended Complaint was not "stamp-filed" until the morning of June 9, 2020. Regarding the failure to plead the date of receipt of the Right-to-Sue Notice, Cajun acknowledges, (doc. 34 at 18), that the date of receipt of the Notice allows the Court to determine whether the Plaintiff's complaint was timely filed in accordance with the statute. *See* 42 U.S.C. § 2000e-5(f)(1) (providing that if the EEOC decides to dismiss the charge, it "shall so notify" the aggrieved person, and the aggrieved person may bring a civil action "within ninety days after the giving of such notice"). "When the date of receipt is in dispute," the Eleventh Circuit "has applied a presumption of three days for receipt by mail, akin to the time period established in Fed. R. Civ. P. [6(d)]." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 953 n.9 (11th Cir. 2005) (discussing receipt of Right-to-Sue Notice for purposes of an ADEA claim, which is also subject to a 90-day filing requirement). Cajun does not argue that the Plaintiff's Complaint was *not* timely filed. Nor could it. The Plaintiff's Complaint was timely filed based on the mailing date of the Right-to-Sue Notice and regardless of when she actually received the letter. The Notice itself was attached to the Plaintiff's original complaint and reflects a mailing date of October 2, 2019. Moreover, the Plaintiff's First Amended Complaint (and the Second Amended Complaint) state that the Notice was mailed on October 2, 2019. Even using the October 2, 2019 *mailing* date as the starting point for calculating the limitations period, the Plaintiff had until December 31, 2019 to file her complaint. Because the Plaintiff filed her original complaint on December 30, 2019, it was timely filed within 90 days "after the giving of" the Right-to-Sue Notice. *See* 42 U.S.C. § 2000e-5(f)(1). While parties are expected to obey the letter of the Court's orders, the Plaintiff here complied with the spirit of the order, which was to discern whether the complaint was filed within 90 days of the Right-to-Sue Notice. The Court also finds relevant the fact that the Plaintiff was pro se when she filed the First Amended Complaint.

law claims against Parker.   Third, the Court will address the Plaintiff's state law claims against Cajun.

### A.  Federal Claims

The Plaintiff brings three federal claims against Cajun: (1) Title VII hostile work environment (Count 1); (2) Title VII retaliation (Count 2); and (3) Title VII sex discrimination (Count 3).  The Court will address each in turn.

### 1.  Title VII Hostile Work Environment

Cajun argues that the Plaintiff's hostile work environment claim is due to be dismissed because she failed to satisfy administrative prerequisites with respect to her hostile work environment claim because she did not file her EEOC charge within 180 days of the "only incident of sexual harassment": Parker's alleged assault of the Plaintiff in the freezer.  Cajun also argues that, even if the EEOC charge was timely filed, the Plaintiff has failed to allege sufficient facts to establish hostile work environment liability.

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  "Title VII prohibits a hostile work environment in which 'a series of separate acts . . . collectively constitute one "unlawful employment practice."'" *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).  "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive

working environment,' Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted).

To plead a cognizable Title VII hostile work environment claim, the plaintiff must allege: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her membership in the protected group; (4) the harassment was severe or pervasive enough to "alter the terms and conditions of employment" and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). "The fourth element . . . is the element that tests the mettle of most sexual harassment claims." *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 582–83 (11th Cir. 2000), *abrogation on other grounds recognized by Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008). The challenged harassment must be both subjectively and objectively severe or pervasive. *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 509 (11th Cir. 2000). "The objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010) (en banc) (citation omitted). Courts consider, "among other factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Miller*, 277 F.3d at 1276.

Assuming without deciding that she timely filed her EEOC charge, the Plaintiff has failed to allege the objective severity of harassment required to sustain a hostile work environment claim. She alleges two incidents of sex-based harassment: Parker's assault and Walker's comment that she should "quit bitching."[3] The frequency of the conduct is low: the Plaintiff alleges two incidents of harassment over the span of two months. And Parker's and Walker's actions fall short of conduct so severe as to alter the terms or conditions of the Plaintiff's employment under Eleventh Circuit precedent. For example, in *Johnson*, the Eleventh Circuit found a male co-worker's conduct toward the female plaintiff sufficiently severe where his "behavior included giving her unwanted massages, standing so close to her that his body parts touched her from behind, and pulling his pants tight to reveal the imprint of his private parts." 234 F.3d at 509. And in *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238 (11th Cir. 2004), the court found a male co-worker's conduct sufficiently severe where he followed the female plaintiff into the restroom; repeatedly tried to touch her breasts, put his hands down her pants, and pull off her pants;

---

[3] In her second amended complaint, the Plaintiff alleges that she experienced harassment based on the assault, Walker's statement to the Plaintiff that she was "bitching too much," Ms. Brealond's statement that the Plaintiff should "get over" the assault, discipline, a poor performance evaluation, and Cajun's refusal to provide her assistance in the store. In its motion to dismiss, Cajun argues that allegations of retaliation for protected activity or disparate treatment are not appropriate in a hostile work environment claim, and also that failure to adequately investigate a complaint is not sex-based harassment. The Court agrees. The Plaintiff's allegations of disparate treatment and retaliation "constitute discrete acts that must be challenged as separate statutory discrimination and retaliation claims" and "cannot be brought under a hostile work environment claim that centers on 'discriminatory intimidation, ridicule, and insult.'" *McCann*, 526 F.3d at 1379 (citation omitted). Additionally, an employer's failure to investigate an employee complaint does not constitute "discriminatory intimidation, ridicule, or insult" for Title VII hostile work environment purposes. *See id.*

Cajun also argues that the "bitching" comment was not sex-based harassment. Drawing all reasonable inferences in the Plaintiff's favor, the Court will treat it as a sex-based comment. *Cf. Reeves*, 594 F.3d at 813 ("It is undeniable that the terms 'bitch' and 'whore' have gender-specific meanings."). And as explained further below, the hostile work environment claim is due to be dismissed even considering the "bitching" comment as part of the sex-based harassment.

and "enlist[ed] the assistance of others to hold her while he attempted to grope her." *Id.* at 1248.  This case, alleging one instance of unwanted physical contact and one derogatory remark, more closely resembles *Guthrie v. Waffle House, Inc.*, 460 F. App'x 803 (11th Cir. 2012) (per curiam),[4] where the court found two male employees' conduct toward the female plaintiff not sufficiently severe where they used crude language towards her or in her presence on several occasions, one grabbed her butt two to five times and asked her on a date ten to twenty times, and the other kissed her on the cheek one time. *Id.* at 804–05, 807–08.

Regarding the third factor, the alleged assault qualifies as physically threatening or humiliating, but the "bitching" comment is a mere offensive utterance.  Thus, the third factor weighs slightly in the Plaintiff's favor.  Finally, the Plaintiff has not demonstrated that either incident unreasonably interfered with her job performance.  True, she alleges that she was "offended" and "felt threatened" by the alleged assault, (doc. 31 at 3, para. 19), and that she "suffered severe emotional distress, embarrassment, and humiliation," (*id.* at 8, para. 63).  However, she does not otherwise allege an unreasonable interference with her job performance.  And notably, Parker was a manager at a different store than the Plaintiff and so she did not have to work with him with any frequency.  Except for the March 2019 managers' meeting, the Plaintiff does not allege that she worked with Parker or saw him at work after the alleged assault.  This circumstance also bears on the Court's consideration of whether the conduct was objectively severe or pervasive.

---

[4] While the Court recognizes that *Guthrie* is an unpublished opinion, the Court finds its analysis persuasive.

Accepting the Plaintiff's factual allegations as true, Cajun's employees "exhibited boorish, rude, unwelcome, and insensitive behavior, but it was not of the frequency or severity necessary to rise to the level" of a hostile work environment. *See Guthrie*, 460 F. App'x at 808. Additionally, the Plaintiff has not demonstrated that her co-workers' alleged conduct unreasonably interfered with her job performance. Because the Plaintiff fails to allege facts demonstrating that the harassment she suffered was objectively severe or pervasive under Eleventh Circuit precedent, she has failed to state a plausible Title VII hostile work environment claim. Accordingly, Cajun's motion to dismiss the hostile work environment claim is due to be granted.

### 2. Title VII Retaliation

Cajun next argues that the Plaintiff's retaliation claim is due to be dismissed. Cajun's only argument for dismissal is that the Plaintiff failed to exhaust administrative remedies with respect to some—but not all—alleged acts of retaliation. In its reply brief, Cajun concedes that the Plaintiff exhausted her administrative remedies with respect to the following allegedly retaliatory acts: the bad performance evaluation, the denial of a raise, the denial of vacation time, and forcing her to work excessive hours. Because a plaintiff's "judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination," *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (citation omitted), the Court declines at this stage to attempt to determine the alleged retaliatory acts for which the Plaintiff exhausted administrative remedies. With respect to the alleged retaliatory acts for which Cajun admits that the Plaintiff exhausted administrative remedies, the Defendant advances no

argument why the retaliation claim should be dismissed.  Cajun does not even articulate the standard for retaliation claims.  Accordingly, Cajun's motion to dismiss the retaliation claim is due to be denied.

### 3. Title VII Sex Discrimination

Next, Cajun argues that the Plaintiff's sex discrimination claim should be dismissed. As a threshold matter, Cajun argues that the Plaintiff failed to exhaust her administrative remedies because her EEOC charge alleges retaliation rather than sex-based discrimination.  The Court is not persuaded.  Notwithstanding the Plaintiff grounding her EEOC charge in retaliation, the scope of the EEOC investigation which could reasonably be expected to grow out of the charge would include her allegations of sex-based discrimination. *See Gregory*, 355 F.3d at 1280.   The Plaintiff relies on the same adverse employment actions to support her claims of retaliation and sex-based disparate treatment. Moreover, courts are "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]" and should not strictly interpret the scope of an EEOC charge. *Id.* (alteration in original) (citation omitted).  Accordingly, the Court is not persuaded that the Plaintiff failed to exhaust her administrative remedies with respect to her sex discrimination claim, and the Court will now turn to the merits.

Cajun argues that the Plaintiff fails to state a plausible sex discrimination claim because: (1) nine out of the eleven actions the Plaintiff challenges do not constitute an "adverse employment action" under Title VII because they do not constitute a serious and material change in the terms, conditions, or privileges of employment; and (2) the Plaintiff does not adequately plead that similarly situated male employees were treated more

14

favorably.  Regarding the adverse employment action argument, Cajun concedes that the denial of a pay raise and the denial of a bonus qualify as adverse employment actions.  That some of the alleged adverse employment actions may not constitute a serious and material change in the terms, conditions, or privileges of employment does not mean the Plaintiff's sex discrimination is due to be dismissed outright.  And the Court declines at this stage to attempt to determine whether each of the nine allegedly discriminatory acts qualify as an "adverse employment action."

Cajun's second argument—that the Plaintiff was required to identify specific male employees who were treated more favorably and allege facts sufficient to demonstrate that they were similarly situated to her—misunderstands the Plaintiff's burden at the pleading stage.  To survive a motion to dismiss, a Title VII plaintiff is not required to plead facts to establish a prima facie case under the *McDonnell Douglas*[5] framework. *Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1253 (11th Cir. 2017), *abrogated on other grounds by Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020); *see Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, 510 (2002) (explaining that the *McDonnell Douglas* prima facie case "is an evidentiary standard, not a pleading requirement").  Instead, the plaintiff "must simply provide enough factual matter to plausibly suggest intentional discrimination." *Evans*, 850 F. 3d at 1253.  Therefore, at the motion to dismiss stage, the Court must determine whether the Plaintiff has pleaded sufficient facts to plausibly suggest that the Defendant discriminated against her because of her sex.  She alleges, *inter alia*, that she was denied

---

[5] In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court set forth the now familiar burden-shifting framework for proving intentional discrimination using circumstantial evidence.

vacation and sick leave while male RGMS were permitted to take such leave. Accepting the factual allegations as true and drawing all reasonable inferences in the Plaintiff's favor, the Court finds that the complaint plausibly suggests intentional sex discrimination. Accordingly, Cajun's motion to dismiss the Plaintiff's sex discrimination claim is due to be denied.

### B. State Law Claims Against Parker

The Plaintiff brings three state law claims against Parker: (1) invasion of privacy (Count 4); (2) assault and battery (Count 5); and (3) outrage (Count 8). Parker has moved to dismiss the invasion of privacy and outrage claims but not the assault and battery claim. The Court will begin with the invasion of privacy claim.

#### 1. Invasion of Privacy

Parker argues that the Plaintiff fails to plausibly allege an actionable invasion of privacy claim under Alabama law. The tort of invasion of privacy can be established by showing "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *McIsaac v. WZEW-FM Corp.*, 495 So. 2d 649, 651 (Ala. 1986). The pertinent question is "whether there was an offensive or objectionable prying or intrusion into [the Plaintiff's] private affairs or concerns." *Busby v. Truswal Sys. Corp.*, 551 So. 2d 322, 324 (Ala. 1989) (per curiam).

In *Stancombe v. New Process Steel LP*, 652 F. App'x 729 (11th Cir. 2016) (per curiam),[6] the Eleventh Circuit found no cognizable invasion of privacy claim where the plaintiff accused his co-worker of two incidents of unwanted physical contact. *Id.* at 738. The court observed the plaintiff did not contend that his co-worker "ever asked [the plaintiff] about his sex life or private affairs, that [the co-worker] made sexually related comments to him, or that [the co-worker] invaded his privacy in any way other than unwanted physical contact on two occasions." *Id.* The court stated that it did not "mean to suggest that unwanted physical contact alone could never constitute an invasion of privacy under Alabama law" and "express[ed] no opinion on the matter." *Id.* Nonetheless, the court found that the co-worker's conduct did not "show an intrusion into [the plaintiff's] private activities sufficient to support an invasion-of-privacy claim." *Id.*

Here, the Court finds that the Plaintiff has not plausibly alleged that the harassing conduct constituted a prying or intrusion into her private affairs. Her claim against Parker rests on a single incident of unwanted physical contact: Parker allegedly approaching the Plaintiff in the walk-in freezer, grabbing her buttocks, and kissing her. Like *Stancombe*, the Plaintiff does not allege that Parker ever asked her about her sex life or private affairs, that Parker made sexually related comments to her, or that Parker invaded her privacy in any way other than unwanted physical contact on one occasion. *Cf. Phillips v. Smalley Maint. Servs.*, 435 So. 2d 705, 707, 711–12 (Ala. 1983) (upholding liability on invasion of privacy claim where defendant interrogated the plaintiff employee two to three times a

---

[6] While the Court recognizes that *Stancombe* is an unpublished opinion, the Court finds its analysis persuasive.

17

week behind locked doors about how often the plaintiff and her husband had sex and in what positions; asked the plaintiff on several occasions whether she had ever engaged in oral sex; later insisted that the plaintiff engage in oral sex with him on penalty of losing her job; and on one occasion locked the plaintiff in his office and insisted that she engage in oral sex with him, though the plaintiff managed to escape).  Like the Eleventh Circuit in *Stancombe*, this Court expresses no opinion as to whether unwanted physical contact alone could ever constitute an invasion of privacy under Alabama law.  But the Court concludes that Parker's alleged conduct here does not "show an intrusion into [the Plantiff's] private activities sufficient to support an invasion of privacy claim." *See Stancombe*, 652 F. App'x at 738.  Accordingly, Parker's motion to dismiss the invasion of privacy claim is due to be granted.

### 2.  Outrage

Parker argues that the Plaintiff cannot state a plausible outrage claim because the single incident of unwanted physical contacted alleged by the Plaintiff is insufficiently outrageous.  To recover under the tort of outrage, the plaintiff must demonstrate that the defendant's conduct "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Wilson v. Univ. of Ala. Health Servs. Found, P.C.*, 266 So. 3d 674, 676 (Ala. 2017).

"The tort of outrage is an extremely limited cause of action." *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000).  The paradigm cases in which the Alabama Supreme Court has recognized it are: "(1) wrongful conduct in the family-burial context; (2) barbaric

methods employed to coerce an insurance settlement; (3) and egregious sexual harassment." *Wilson*, 266 So. 3d at 677 (citations omitted).  While the tort of outrage is not limited to those three categories, *id.*, the challenged conduct must "be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society," *Jenkins v. U.S. Fid. & Guar. Co.*, 698 So. 2d 765, 768 (Ala. 1997).  In *Mills v. Wex-Tex Industries*, 991 F. Supp. 1370 (M.D. Ala. 1997),[7] the district court, applying Alabama law, denied summary judgment on the female plaintiff's outrage claim where the defendant supervisor had grabbed her buttocks, grabbed her breasts twice, pinned her against a wall and tried to kiss her, pinched her, tried to pull her by the arm into his office, and "sent her a note that said 'I believe I can get what I want off you with you in a coma so we won't fight but once!'" *Id.* at 1377, 1386.  By contrast, in *McIsaac*, the Alabama Supreme Court held that the plaintiff did not have an actionable outrage claim where her boss had tried to kiss her, asked her to have an affair, gave her suggestive "looks," asked her out to dinner and on out-of-town trips, touched her arm and tried to put his arm around her, and ultimately fired her for refusing his advances. 495 So. 2d at 650–51.  And in *Stancombe*, the Eleventh Circuit held that, while "the act of grabbing another's head and, while fully clothed, making pelvic thrusts in his face" was "boorish, vulgar, and completely unacceptable," it was "not sufficiently egregious for the tort of outrage" under Alabama law. 652 F. App'x at 739.

Accepting the Plaintiff's allegations as true, Parker grabbed her buttocks and kissed her without her consent.  This conduct is undoubtedly "boorish, vulgar, and completely

---

[7] While the Court recognizes that *Mills* is not binding, the Court finds its analysis persuasive.

unacceptable." *See id.*  However, it is not sufficiently egregious to meet the high bar for the tort of outrage under Alabama law.  Accordingly, the Court finds that Parker's motion to dismiss the outrage claim is due to be granted.

### C.  State Law Claims Against Cajun

The Plaintiff brings five state law claims against Cajun: (1) invasion of privacy (Count 4); (2) assault and battery (Count 5); and (3) negligent or wanton retention (Count 6); (4) negligent or wanton supervision (Count 7); and (5) outrage (Count 8).  The Court will address the assault and battery, invasion of privacy, and outrage claims together and then will address the supervision and retention claims together.

### 1.  Liability by Ratification for Assault and Battery, Invasion of Privacy, and Outrage

Cajun argues that the Plaintiff fails to state a plausible claim against it for assault and battery, invasion of privacy, and outrage.  Under Alabama law, an employer is liable for the intentional torts of its agent if: (1) the wrongful acts were committed in the line and scope of his employment; (2) the acts were in furtherance of the employer's business; or (3) the employer "participated in, authorized, or ratified the wrongful acts." *Potts v. BE & K Constr. Co.*, 604 So. 2d 398, 400 (Ala. 1992).  Here, the Plaintiff contends that Cajun ratified Parker's actions.  To establish that the employer "ratified" the tortious conduct of one employee against another employee, the complaining employee must show: (1) the underlying tortious conduct of the offending employee; (2) the employer had actual knowledge of the offending employee's tortious conduct against the complaining employee; (3) based on this knowledge, the employer knew or should have known that such conduct constituted sexual harassment, a continuing tort, or both; and (4) the employer

failed to "take 'adequate' steps to remedy the situation." *Id.*  If the steps taken by the employer are not "reasonably calculated to halt the harassment, the steps taken by the employer are not 'adequate.'" *Id.* at 401.

Cajun cannot be held liable for the underlying torts of outrage and invasion of privacy because, as discussed above, the Plaintiff has failed to state plausible claims against Parker as to either.  In the absence of an employee's underlying tortious conduct, the employer cannot be held liable. *See id.* at 400.  Accordingly, the Court will proceed to consider whether the Plaintiff has plausibly pled that Cajun ratified, and thus can be held liable for, Parker's alleged assault and battery upon the Plaintiff.

Based on the Plaintiff's allegations, Parker approached her in the walk-in freezer, grabbed her buttocks, and kissed her without her consent on one occasion.  She immediately reported the incident to her supervisor, but he took no action even though company policy required him to report the incident to HR.  She also allegedly reported the incident to other Cajun employees, but no action was taken until approximately five months later.  When Cajun finally investigated the matter, it did not discipline Parker, and its HR representative told the Plaintiff to "get over it."  The Plaintiff does not allege, however, that Parker subjected her to further assaults, batteries, or other misconduct after she reported the assault.  She alleges a single, completed incident of assault—not a continuing tort or ongoing sexual harassment.  Under these facts, Cajun cannot be held liable under a ratification theory for failing to take adequate corrective action for Parker's prior, completed alleged misconduct when it was neither sexual harassment nor continuing.  Otherwise, Cajun would be liable for an employee's tortious conduct about which it had

no prior notice and an opportunity to prevent.  Thus, the Court finds that Cajun did not plausibly ratify Parker's alleged assault and battery and is not liable for such misconduct. *See Patterson v. August Wiring Sys., Inc.*, 944 F. Supp. 1509, 1524 (M.D. Ala. 1996) (applying Alabama law and holding that employer did not ratify employee's alleged assault and battery where employee did not assault or batter the plaintiff again after the employee was counseled by the employer).[8]

The Plaintiff suggests that by failing to adequately investigate and address the assault, Cajun "failed to take adequate steps to remedy the situation" notwithstanding the fact that Parker's alleged misconduct was a single, non-recurring incident.  But the Court is not convinced that this backward-looking approach is the "remedy" with which ratification theory is concerned.  Instead, in the Court's view, the remedy is forward looking and asks whether the employer, once it has learned of an employee's misconduct, took adequate steps to prevent the misconduct from recurring. *See, e.g.*, *id.*  The Court declines to find a basis for employer liability based on an employee's isolated incident of assault when, according to the Plaintiff, the employer had no prior notice or reason to believe that such an assault might occur.

Accepting the Plaintiff's allegations as true, Cajun's employees ignored her complaints of a sexual assault for months, her supervisor failed to report it to HR as required by company policy, and when Cajun finally investigated the matter, it did not discipline her assailant and its HR representative told her to "get over it."  While those actions may constitute bad business practices, the Court is not persuaded that they provide

---

[8] While the Court recognizes that *Patterson* is not binding, the Court finds its analysis persuasive.

a plausible basis for holding Cajun liable for Parker's assault and battery under a ratification theory.  Additionally, for the reasons explained above, the invasion of privacy and outrage claims against Cajun fail for the lack of underlying tortious conduct.  Accordingly, Cajun's motion to dismiss the assault and battery, invasion of privacy, and outrage claims against it is due to be granted.

### 2.  Negligent or Wanton Supervision and Retention

Finally, Cajun argues that the Plaintiff has failed to state plausible claims for negligent or wanton supervision and retention.  In Alabama, an employer (a "master") is liable for the "incompetency" of its employee (a "servant") when it is "established by affirmative proof that [the servant's] incompetency was actually known by the master or that, had [the master] exercised due and proper diligence, [it] would have learned that which would charge [it] in the law with such knowledge." *Big B, Inc. v. Cottingham*, 634 So. 2d 999, 1003 (Ala. 1993), *superseded by statute on other grounds as stated in Horton Homes, Inc. v. Brooks*, 832 So. 2d 44 (Ala. 2001).  However, not just any "incompetency" is sufficient; the plaintiff must prove that the allegedly incompetent employee committed a "common law tort recognized by Alabama courts." *Andazola v. Logan's Roadhouse Inc.*, 871 F. Supp. 2d 1186, 1125 (N.D. Ala. 2012).  To hold an employer liable for negligent or wanton supervision and retention, the plaintiff must demonstrate that (1) the employee committed a tort recognized under Alabama law; (2) the employer had actual notice of this conduct or would have gained such notice if it exercised "due and proper diligence"; and (3) the employer failed to respond adequately to this notice. *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 682 (Ala. 2001); *Hawes v. Bailey*, 2019 WL 112211, at *2

(N.D. Ala. Jan. 3, 2019) ("[T]he torts of negligent or wanton entrustment, hiring, training, supervision, and retention all require a plaintiff to show an employer knew or should have known its employee was incompetent.").  Regarding the third element, wanton supervision and retention claims require a showing that the employer wantonly or recklessly disregarded its employee's misconduct, *see Armstrong*, 817 So. 2d at 682, whereas negligent supervision and retention claims require a showing that the employer failed to exercise "due care in the way that they handled the matter," *Big B*, 634 So. 2d at 1004.

The Plaintiff argues that Cajun was negligent or wanton in supervising and retaining Walker after he failed to follow company policy requiring him to report the Plaintiff's complaint to HR and made the "bitching" comment.  This argument fails, however, because neither the failure to follow company policy nor a single derogatory remark constitutes a tort under Alabama law.

The Plaintiff also argues that Cajun was negligent or wanton in supervising and retaining Parker after the assault.  She contends that all three elements for liability are met: there was underlying tortious conduct because Parker committed an assault and battery against her; Cajun had actual knowledge because she told four people over the course of five months; and Cajun failed to respond adequately because it took no action for months, and when it finally investigated, it did not discipline Parker and told the Plaintiff to "get over it," and that such failure constitutes a failure to exercise due care and/or wanton disregard.  The Plaintiff's argument is flawed because Cajun's knowledge of Parker's allegedly tortious conduct is relevant only to the extent that Parker subsequently committed additional tortious acts against the Plaintiff due to Cajun's failure to take sufficient action

24

to stop him. *See, e.g.*, *id.* at 1003–04 (upholding jury verdict finding that employer had negligently supervised employee who sexually assaulted plaintiff where employer knew, prior to plaintiff's assault, that employee had assaulted another employee and the employer failed to impose sufficiently serious discipline); *Machen v. Childersburg Bancorporation*, 761 So. 2d 981, 987 (Ala. 1999) (denying summary judgment for employer on negligent supervision claim because a jury could find that "had [the employer] monitored and/or supervised the situation more carefully, [the employee] would not have repeated the acts of misconduct"); *Sears v. PHP of Ala., Inc.*, 2006 WL 932044, at *21 (M.D. Ala. Apr. 10, 2006) (denying summary judgment for employer on negligent supervision claim because fact disputes existed regarding adequacy of employer's response to plaintiff's complaints of misconduct, explaining that there were "disputed issues of fact as to whether [the employer's] response to [the plaintiff's] complaint was sufficient to protect her from [the employee's] behavior" and noting that the harassment continued); *cf. Akers v. Sanderson Farms, Inc.*, 2015 WL 114221, *7 (N.D. Ala. Jan. 8, 2015) ("Because Plaintiff has failed to present any evidence which would support a conclusion that Sanderson Farms was negligent in retaining Flowers as a driver at any point *prior* to the accident, Sanderson Farms is entitled to summary judgment on Plaintiff's negligent retention claim." (emphasis added)).  Here, the Plaintiff does not allege that Parker subjected her to further assaults, batteries, or other misconduct after she reported the assault.  Moreover, the Plaintiff does not allege that Parker had engaged in inappropriate conduct prior to her assault such that Cajun knew or should have known that Parker might assault her before he allegedly did so. Parker allegedly committed a single, completed act of assault that, based on the Plaintiff's

25

allegations, was unforeseeable.  The Court is not persuaded that this presents a viable claim for negligent/wanton supervision or retention.

The Court finds that the Plaintiff has failed to state plausible negligent or wanton retention and supervision claims arising out of an employee's isolated act of assault upon her when, according to her allegations, the employer had no prior notice or reason to believe that such an assault might occur.  Accordingly, Cajun's motion to dismiss the negligent or wanton retention and supervision claims is granted.

## VI.  CONCLUSION

Accordingly, for the reasons stated, and for good cause, it is

ORDERED as follows:

1.      Cajun's motion to dismiss (doc. 34) is GRANTED IN PART to the extent that the Title VII hostile work environment, invasion of privacy, assault and battery, negligent/wanton retention, negligent/wanton supervision, and outrage claims (Counts 1 & 4–8) against Cajun are DISMISSED, and DENIED as to the remaining claims.

2.      Parker's partial motion to dismiss (doc. 44) is GRANTED, and the invasion of privacy and outrage claims against Parker (Counts 4 & 8) are DISMISSED.

All other claims against the Defendants remain pending.

DONE this 14th day of February, 2022.

_____/s/Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE

26