IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MONICA N. EAVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO. 2:19-cv-1094-ECM |
| | ) | (WO) |
| CAJUN OPERATING COMPANY d/b/a/ | ) | |
| CHURCH'S CHICKEN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

Plaintiff Monica N. Eaves ("Eaves") brings this action against her employer, Defendant Cajun Operating Company d/b/a Church's Chicken ("Cajun"), and one of Cajun's employees, Defendant Kenneth Parker ("Parker") (collectively, "Defendants"). In her second amended complaint (the operative complaint), she brings claims of retaliation and sex discrimination against Cajun pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). This Court previously dismissed Eaves' Title VII hostile work environment claim, as well as several Alabama state law claims, against Cajun. *See Eaves v. Cajun Operating Co.*, 2022 WL 453531 (M.D. Ala. Feb. 14, 2022). In the same opinion, this Court denied Cajun's motion to dismiss Eaves' retaliation claim. *Id.* Cajun now seeks a second bite at the apple and requests judgment on the pleadings on Eaves' retaliation claim.

## II. JURISDICTION

The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and the jurisdictional grant found in 42 U.S.C. § 2000e-5(f)(3).  Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III.   LEGAL STANDARD

Judgment on the pleadings under Fed. R. Civ. P. 12(c) is appropriate "when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008).  To decide a Rule 12(c) motion for judgment on the pleadings, courts apply the same standard applied to Rule 12(b)(6) motions to dismiss. *Johns v. Marsh & McLennan Agency LLC*, 2020 WL 1540397, at *1 (M.D. Ala. Mar. 31, 2020).  That is, the Court must accept all facts alleged in the complaint as true, viewing them in the light most favorable to the non-movant. *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001).  Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## IV. FACTUAL AND PROCEDURAL BACKGROUND

Eaves began working at Church's Chicken on approximately September 6, 2006, as a shift leader.  Since 2013, Eaves has been a Restaurant General Manager ("RGM") at the store located at 4770 Mobile Highway, Montgomery, Alabama.  On approximately January

30, 2019, Parker, the RGM of another Church's Chicken restaurant in the same region, came to the Mobile Highway store while Eaves was working.  During his visit, Parker entered the walk-in freezer where Eaves was working and, without permission, allegedly kissed Eaves and grabbed her buttocks.  Eaves was offended and felt threatened by the actions.

The next day, Eaves reported the incident to her immediate supervisor, Moses Walker ("Walker").  Company policy required Walker to report the incident to Human Resources.  However, he did not report the incident and no action was taken, even when Eaves followed up with him about it.

In March 2019, Eaves attended a RGM meeting with Walker and the RGMs in the Montgomery area, including Parker.  Parker's presence made Eaves uncomfortable. During the meeting, Eaves asked Walker a question about insurance.  Walker responded in a hostile manner and stated, "Be careful, you're bitching too much."  Eaves believed this comment was related to her repeated complaints to Walker about the incident in January 2019.

After the March 2019 meeting, Eaves contacted Adrienne Brealond, Cajun's HR representative, and reported the January 2019 incident, Walker's failure to take any action, and Walker's inappropriate comment.  Brealond said she had no knowledge of Eaves' prior complaint to Walker and that she would investigate the incident.  According to Eaves, Brealond did not visit the Mobile Highway store, did not speak further to Eaves, did not interview potential witnesses, and took no corrective or remedial action.

3

On approximately May 8, 2019, Walker gave Eaves her annual performance evaluation for the 2018 year.  Walker rated Eaves "Below Target" in many categories.  As a result, Eaves did not receive a bonus, was ineligible for a raise, and was given a Performance Improvement Plan.  In her almost fourteen years as a Church's Chicken employee, Eaves had never before received a "Below Target" evaluation or overall negative review, nor had she been on a Performance Improvement Plan.

On approximately June 11, 2019, Eaves contacted Angela Pettway, the Zone 2 Director, regarding the initial incident, offensive comments, and the failure of Walker and Human Resources to take any remedial action.  Pettway did not investigate or otherwise respond to Eaves' complaints.

On approximately June 13, 2019, Eaves reported the initial incident and other issues to Cajun's "Speak Freely" hotline.  On June 19, 2019, Cajun conducted a surface-level investigation of the incident but did not investigate or take any action relating to Walker's comment or lack of remedial action.  In a meeting with Eaves, Walker, and Brealond, Eaves was told that, although she had been sexually assaulted, it only happened one time and was not enough to constitute sexual harassment and did not warrant discipline for Parker. Brealond allegedly told Eaves to "get over" the incident.

After complaining about the assault, comments, and other issues, Eaves began experiencing scheduling issues.  Her contract requires her to work fifty hours per week. However, for months Eaves has been scheduled to work sixty to seventy hours or more per week, even though Walker has allowed other male RGMs, including Parker, to work fewer

than the required fifty hours per week.  Additionally, Walker has denied Eaves' requests to use vacation time or sick days, even though he has allowed other male RGMs, including Parker, to take time off.  Eaves repeatedly requested assistance at her store due to the hours she was required to work and the store continuously being short-staffed.  However, those requests were ignored and denied.[1]

Eaves filed her original complaint (doc. 1) on December 20, 2019, which she amended twice.  On August 31, 2020, Cajun filed a motion to dismiss Eaves' second amended complaint. (Doc. 34).  On February 14, 2022, this Court granted the motion with respect to Eaves' Title VII hostile work environment and Alabama state law claims but denied the motion with respect to Eaves' Title VII retaliation and sex discrimination/disparate treatment claims. (Doc. 53).  On August 3, 2022, Cajun filed a motion for judgment on the pleadings as to Eaves' retaliation claim. (Doc. 62).

## V. DISCUSSION

"To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate: (1) that [s]he engaged in statutorily protected activity; (2) that [s]he suffered adverse employment action; and (3) that the adverse employment action was causally related to the protected activity." *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998) (citing *Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995)).  "A plaintiff engages in 'statutorily protected activity' when he or she

---

[1] The facts of this case are the same as when the Court ruled on Cajun's motion to dismiss.  *See Eaves*, 2022 WL 453531.  As the standard of review is the same on a motion for judgment on the pleadings, the Court has adopted, with minor modifications, the facts from its earlier opinion.

protests an employer's conduct which is actually lawful, so long as he or she demonstrates 'a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Id.* at 1388 (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)).   "To make that demonstration, a plaintiff need only allege conduct that is 'close enough' to an unlawful practice 'to support an objectively reasonable belief that it is.'" *Alkins v. Sheriff of Gwinnett Cnty.*, 2022 WL 3582128, at *2 (11th Cir. Aug. 22, 2022) (quoting *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999)).

The objective reasonableness of a plaintiff's belief "is somewhat fact intensive." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999).   "[T]he plaintiff is not required to prove that the discriminatory conduct complained of was actually unlawful." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016) (citing *Little*, 103 F.3d at 960).   However, "[w]here binding precedent squarely holds that particular conduct is not an unlawful employment practice by the employer, and no [binding] decision . . . has called that precedent into question or undermined its reasoning, an employee's contrary belief that the practice is unlawful is unreasonable." *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1214 (11th Cir. 2008) (citing *Harper*, 139 F.3d at 1388–89).

Cajun presents two arguments as to why it is due judgment on the pleadings on Eaves' retaliation claim.  Those arguments challenge only one element of Eaves' retaliation claim: whether she engaged in protected activity.  Cajun first argues that because this Court dismissed Eaves' Title VII hostile work environment claim, Eaves cannot have a viable

retaliation claim.  As Cajun sees it, because Eaves did not establish the elements of a hostile work environment claim, Eaves could not have held an objectively reasonable belief that the conduct she reported amounted to an unlawful employment practice.  Under that reasoning, Eaves did not engage in protected activity by reporting Parker and Walker's conduct.

Cajun's argument overstates the law on retaliation claims.  While a plaintiff's objectively reasonable belief that she is reporting an unlawful employment practice is informed by current law, the reasonableness of that belief must be assessed at the time the report took place.  The reasonableness of that belief cannot, however, be informed by law that develops *after* the report is made.  To find otherwise would be to hold plaintiffs accountable to future legal developments.  This Court declines to do so.

Thus, the reasonableness of Eaves' belief that she was reporting an unlawful employment practice must be assessed at the time she reported the conduct, not at the time the Court evaluates that conduct.  Accordingly, this Court's determination that Eaves does not have a hostile work environment claim has no impact on the reasonableness of Eaves' belief that she was reporting an unlawful employment practice.

Cajun next argues that judgment on the pleadings is appropriate because Eleventh Circuit precedent in *Butler* and *Clover* squarely precludes a finding that Cajun engaged in an unlawful employment practice.  Accordingly, Cajun argues, Eaves did not engage in protected activity because she could not have held an objectively reasonable belief that she

was reporting an unlawful employment practice. *Butler* and *Clover*, however, bear significant differences from the case at hand.

In *Butler*, the plaintiff was a passenger in a co-worker's vehicle during a lunch break. *Id.* at 1210. The vehicle was involved in a collision with another vehicle, and the plaintiff's co-worker called the driver of the other vehicle a racial epithet. *Id.* The plaintiff subsequently reported her co-worker's conduct to a supervisor. *Id.* The Eleventh Circuit held that the plaintiff could not have had an objectively reasonable belief that she was reporting an unlawful employment practice for purposes of her retaliation claim. *Id.* at 1214. The court emphasized that the reported conduct was not directed towards the plaintiff, took place away from work, and was attributed to a co-worker rather than a supervisor. *Id.* at 1213.

*Butler* differs from the case at hand in several key respects. First, while the reported conduct in *Butler* was not directed at the plaintiff, Parker's conduct in groping and kissing Eaves was unquestionably directed towards her. Second, while the conduct in *Butler* took place away from work during lunch hours, the conduct here took place on Cajun's property while Eaves was on duty. Third, while *Butler* involved an isolated incident from a non-supervisorial co-worker, the case at hand is more layered, despite Cajun's attempt to frame it otherwise. Although Parker was not Eaves' supervisor, he was a RGM for Cajun and served in a supervisorial capacity, which exceeds the co-worker's status in *Butler*. Further, Parker's conduct is not the only behavior at issue; Eaves also reported Walker for his "quit bitching" comment and his failure to act on her allegations against Parker. Walker's

involvement as Eaves' direct supervisor takes this situation beyond *Butler*, where the conduct at issue stemmed solely from a co-worker.[2]  These crucial differences show that *Butler* does not preclude a finding that Eaves had an objectively reasonable belief that she was reporting an unlawful employment practice.

Clover is similarly inapposite to the case at hand.  In *Clover*, the plaintiff reported that a male supervisor made frequent visits to a female co-worker's desk, called the co-worker on her personal beeper during work hours, and knocked on the co-worker's door. *Clover*, 176 F.3d at 1350.  The Eleventh Circuit remarked that "[n]one of the conduct that [the plaintiff] described comes anywhere near constituting sexual harassment" and held that the plaintiff could not have held an objectively reasonable belief that such conduct amounted to an unlawful employment practice for purposes of her retaliation claim. *Id.* at 1351.

Notably, none of the conduct in *Clover* involved physical contact.  Rather, it involved mere communication.  Parker's conduct, however, exceeds mere communication. Parker initiated physical contact when he non-consensually grabbed Eaves' buttocks and kissed her.  This conduct far exceeds the severity of the conduct in *Clover*.  Accordingly, *Clover* is incomparable and does not preclude a finding that Eaves had an objectively reasonable belief that she reported an unlawful employment practice.

---

[2] The Court finds Cajun's citations to *Little*, 103 F.3d 956, and *Wilson v. Farley*, 203 F. App'x 239 (11th Cir. 2006), unpersuasive for the same reason.  Both cases involve isolated conduct from co-workers and thus do not reach the case at hand.

Both parties argue that *Alkins* weighs in their favor.  In *Alkins*, the plaintiff brought a retaliation claim after she reported her supervisor for kissing her without her permission. *Alkins*, 2022 WL 3582128, at *1.  The Eleventh Circuit held that "[a] reasonable person in [the plaintiff's] shoes could believe that receiving an unwanted, open-mouthed kiss from a supervisor was sexual harassment" and allowed the plaintiff's retaliation claim to survive summary judgment. *Id.* at *3.

Eaves points to the similarity in conduct between this case and *Alkins*.  She argues that the conduct in her case, which involves unwanted groping in addition to an unwanted kiss, is "close enough" to the conduct in *Alkins* such that she had an objectively reasonable belief that she was reporting an unlawful employment practice.  Cajun, however, points to the difference in the relationship between the plaintiff and the perpetrator.  The perpetrator of the unwanted conduct in *Alkins* was the plaintiff's direct supervisor; Parker, however, does not hold a direct supervisorial role over Eaves.  As Cajun argues, a plaintiff could reasonably believe such conduct constitutes an unlawful employment practice only if the conduct stems from the plaintiff's supervisor.

While Cajun is correct to point out the distinction in supervisorial status, Cajun underplays Parker's supervisorial role as a RGM at Cajun.  Cajun also overlooks Walker's subsequent involvement and his "quit bitching" comment, which Eaves also reported. Importantly, Eaves must only show that the relevant conduct is "close enough" to an unlawful employment practice.  Due to the factual nature of the inquiry, the Court cannot at this stage of the litigation foreclose the possibility that Eaves had an objectively

reasonable belief that she reported an unlawful employment practice and thus engaged in protected activity.  Accordingly, Cajun's motion for judgment on the pleadings is due to be DENIED.

## VI. CONCLUSION

For the reasons discussed above, it is hereby

ORDERED that the Defendant's Motion for Judgment on the Pleadings (doc. 62) is DENIED.

Done this 14th day of November, 2022.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE